Elliott-Lewis Company, Inc. v. Commissioner.
Elliott-Lewis Co. v. Commissioner
Docket No. 3275.
United States Tax Court
1945 Tax Ct. Memo LEXIS 316; 4 T.C.M. (CCH) 136; T.C.M. (RIA) 45047; January 30, 1945
*316 At the beginning of the taxable year petitioner had outstanding certain class A common stock and certain preferred stock. Under its charter it was also authorized to issue class B common stock. During the taxable year petitioner amended its charter so as to authorize it to issue class A and B debentures and new class A and B common stock. It exchanged all of its old preferred stock for class A debentures, most of its old class A common stock for class B debentures, and the balance of its old class A common stock for new class A common stock. The debentures were payable on or before December 30, 1955 and were subordinate to the claims of general creditors. The class A debentures called for interest at five percent per annum, payable quarterly, and the class B debentures called for interest at 50 percent per annum, payable quarterly. In case of default for one year in the payment of interest, the class A debenture holders were entitled to cast one vote for each $100 debenture and the class B debenture holders were entitled to cast 25 votes for each $100 debenture. Held, the class A debentures represented indebtedness and payments thereon were deductible as interest. Held, further, *317 the class B debentures established a proprietary rather than a debtor-creditor relationship and payments thereon were not deductible as interest. C. Walter Randall, Jr., Esq., 2301-17 Packard Bldg., Philadelphia 2, Pa., for the petitioner. Paul E. Treusch, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion This proceeding involves the determination by the respondent of a deficiency in income tax for the taxable fiscal year ended July 31, 1941, in the amount of $5,340.17. The only issue involved is whether certain payments which petitioner made in the taxable year to its *318 debenture holders represented interest paid to them on indebtedness, or whether these debentures represented a proprietary interest in the business and disbursements thereon were payments in the nature of dividends and not deductible. It was stipulated at the hearing that all other adjustments made by the respondent in his deficiency notice had been settled by agreement, and that petitioner had paid the amount of the deficiency due thereto. It was also stipulated at the hearing that if this Court should find in petitioner's favor on the above-mentioned issue submitted to us, then our decision should be that there is no deficiency; and that if this Court should find in respondent's favor thereon, then our decision should be under Rule 50. Findings of Fact Most of the facts have been stipulated. The stipulation and the exhibits thereto are incorporated herein by reference. Petitioner is a corporation duly organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with its principal office and place of business at Philadelphia. Its returns for the taxable year here involved were filed with the Collector for the First District of Pennsylvania at *319 Philadelphia. Petitioner kept its books and filed its returns on the accrual method of accounting. Petitioner was incorporated December 29, 1939, with the power to deal in heating systems and products incidental thereto, petroleum, home insulation, air conditioning and refrigerator systems. Under its original articles of incorporation, petitioner was authorized to issue 1,100 shares 5 percent cumulative $50 per value preferred stock; 16,250 shares class A common stock, no par value; and 8,750 shares class B common stock with a par value of $10 per share. Petitioner's immediate predecessor was the Elliott-Lewis Electrical Company, Inc., a Delaware corporation (hereinafter sometimes referred to as "Delaware"), which was organized in 1932 to take over the business of Elliott-Lewis Electrical Company, a Pennsylvania corporation (hereinafter sometimes referred to as "Electrical") which had itself been incorporated in 1905. Electrical is still in existence. From 1932 to 1939, inclusive, Delaware operated two sites of business in Philadelphia, one the site of the wholesale electrical appliance supply business at 1017 Race Street, and the other the site of the oil burner distributor business *320 at 2518 North Broad Street. The two operations were entirely distinct, but the results of the operations of the two branches were consclidated yearly for tax purposes. T. H. Lewis and F. R. Elliott, Sr., each originally owned 50 percent of the common stock of Delaware, but, as the result of gifts to various members of their respective families, the stockholders of this corporation at the date of its dissolution in December 1939, were as follows: Shares of
Shares of
Stockholder
Common stock
Preferred Stock
T. H. Lewis
465
I. S. Lewis (wife of T. H. Lewis)
225
424
George Lewis (brother of T. H. Lewis)
194
M. N. Lewis (step-mother of T. H. Lewis)
45
M. L. Elliott (sister of T. H. Lewis)
354
F. R. Elliott, Sr
390
F. R. Elliott, Jr
150
M. L. Elliott (wife of F. R. Elliott, Sr.)
150
1,380
1,017
The preferred and common shareholders of Delaware agreed in a contract entered into on December 19, 1939, which was supplemented by a further agreement dated December 29, 1939, to dissolve that corporation, to liquidate wholly its assets and to operate in its stead two separate and distinct corporations. Pursuant to the first of these agreements, *321 Delaware was dissolved on December 20, 1939. In execution of these agreements, entries were made on the books of Delaware and petitioner, transferring to petitioner such portion of the assets of Delaware as T. H. and I. S. Lewis should be entitled to as common shareholders of Delaware in consideration for the issuance to them of all the class A common stock of petitioner. In further execution of these agreements, entries were made on the books of Delaware and petitioner transferring to Electrical the assets to which the Elliotts might be entitled as common shareholders of Delaware in consideration for the issuance to them of all the common stock of Electrical. Pursuant to these agreements, the preferred shareholders received, in proportion to their respective stock interests in Delaware, the preferred stock of petitioner having an aggregate face value of $50,850, and also the preferred stock of Electrical having a similar aggregate face value, in exchange for their preferred shares of Delaware having an aggregate face value of $101,700. Pursuant to the same agreements, entries were made on the books of Delaware and petitioner on December 29, 1939, transferring to petitioner the preferred *322 shareholders' interests in the assets of Delaware in the aggregate amount of $50,850. Pursuant to the same agreements, the preferred stock of petitioner was issued on the same date as follows: I. S. Lewis
424 shares
George Lewis
194 shares
M. N. Lewis
45 shares
M. L. Elliott
354 shares
Total
1,017 shares The above 1,017 shares constituted all of the preferred stock of petitioner which was issued. Pursuant to the same above-mentioned agreements, entries were made on the books of Delaware and petitioner on December 29, 1939, transferring to petitioner the common shareholders' interests in the assets of Delaware in the aggregate amount of $70,006.67. The 16,250 shares of petitioner's books at a figure of $65,000 (,4 per share), and the balance of $5,006.67 was credited to paid-in surplus. These shares were issued on December 29, 1939 as follows: T. H. Lewis
8,750 shares
I. S. Lewis
7,500 shares
Total
16,250 shares The above 16,250 shares constituted all the class A common stock of petitioner which was issued. At the first meeting of the board of directors of petitioner, held December 29, 1939, it was resolved that the right to subscribe *323 to the authorized shares of class B common stock be restricted to the following individuals: T. H. Lewis, F. R. Attwood, Joseph Call, J. C. Campbell, O. L. Draeger, R. W. Loomis, H. R. MacAvoy, A. M. Morton and J. E. Rowland. These individuals constituted the entire board of directors of petitioner from December 29, 1939, to December 31, 1941. Of these directors, the following were officers of petitioner between those dates: T. H. Lewis
President
J. E. Rowland
Vice-President
A. M. Morton
Treasurer
O. L. Draeger
Secretary The remainder of the board of directors were employees. It was further resolved at this meeting that the right to subscribe to such stock should cease with the death or termination of the employment of any such person. None of the originally authorized class B common stock was in fact ever subscribed to or issued. At the first quarterly meeting of the board of directors of petitioner, held April 15, 1940, it was resolved that petitioner declare and pay in cash a quarterly dividend of 5 percent per annum on the outstanding preferred stock. A like resolution was passed at subsequent directors' meetings held on July 24 and November 4, 1940. The *324 quarterly dividends on the preferred stock thus declared were paid on or about the above dates of declaration, respectively. The final quarterly dividend on this stock was paid on or about January 15, 1941, without declaration by the board of directors. On December 26, 1940, a special meeting of petitioner's board of directors was held. Among other things the minutes of this meeting recorded the following: "Mr. Lewis then said that he and Mrs. Lewis, the holders of all the Class 'A' common stock of the Company were anxious to change their interests in the Company from shareholder status to creditor status and they desired to reduce their participation in the business of Elliott-Lewis Company, Incorporated, as shareholders. He also advised the Board that the Preferred Shareholders of the Company were of similar mind and were desirous of exchanging their Preferred Stock for Preferred Debenture certificates, if such exchange was possible. "After considerable discussion it was proposed that the Company accede to the wishes and desires of the holders of its preferred and common shares. Mr. Lewis informed the Board that it was desired that 12,750 shares of the Class 'A' common stock, *325 of the issued 16,250 shares, be exchanged for Debentures. The Directors were of opinion that the proposed Debentures should be of two classes and should be junior in all respects to the rights of general creditors of the Company. The Directors were of opinion that all of the preferred shareholders desired to exchange their holdings for Debentures, and that all shareholders would be satisfied to accept Debentures that would be subordinate to the rights of general creditors. * * * "The Directors were of opinion that under the circumstances it was desirable that the Articles of Incorporation of the Company be amended to carry out the intentions of this meeting. * * * Whereupon, on motion duly made and seconded it was unanimously "RESOLVED. That the Articles of Incorporation of the Company be amended so as to provide for (a) The redemption and cancellation of the 1100 shares of $50. par value 5% cumulative preferred stock; (b) The reduction of the number of authorized Class 'A' common shares, without nominal or par value from 16,250 shares to 3,500 shares; and the reduction of the stated value applicable thereto from $100,000. to $14,000.; (c) The increase of the authorized number *326 of Class 'B' common shares with a par value of $10. a share from 8,500 shares to 15,000 shares; (d) The issuance of $50. 15 Year Class 'A' Debentures bearing interest at five percentum per annum, amounting in the aggregate to $55,000; and of $100. 15 Year Class 'B' Debentures, callable after five years and entitling the holders thereof to receive $50. for each $100. Debenture per annum, amounting in the aggregate to $51,000.; the said Class 'A' and Class 'B' Debentures to be junior to and subordinate to the rights of general creditors of the Company in all respects. * * * * *
"Mr. Lewis thereupon state's that he had been advised by counsel that [*] proposal to issue $50. 15 Year Class 'A' Debentures, bearing interest at five percentum per annum, amounting in the aggregate to $55,000.; and $100. 15 Year Class 'B' Debentures, amounting in the aggregate to $51,000.; constituted an increase in corporate indebtedness of the Corporation, within the meaning of the phrase as used in the Constitution of Pennsylvania and the Acts of Assembly of the Commonwealth. He stated that counsel had informed him that such issuance constituted an increase in corporate indebtedness from 0 to $106,000., *327 and consequently, the consent, authorization and approval of the shareholders was required before such debentures could be issued. Whereupon, on motion duly made and seconded it was unanimously "RESOLVED: That the Board of Directors does hereby propose that the corporate indebtedness of the Company be increased from 0 to $106,000." A special meeting of the shareholders of petitioner was held the next day, December 27, 1940, at which meeting resolutions were adopted approving the action taken by the board of directors on the previous day. The holders of the preferred stock were represented at this meeting by proxies running to T. H. Lewis. On December 27, 1940, a special meeting of petitioner's board of directors was also held. Among other things the minutes of this meeting recorded the following: "Mr. Draeger stated that of the authorized preferred shares of the Company there were presently issued and outstanding 1,017 shares and that the holders of all of the shares so issued and outstanding had signified their willingness to accept in exchange for the preferred shares presently held, the Class 'A' Debentures of the Company having an equal dollar value. He further stated *328 that the holders of 12,750 shares of Class 'A' common stock, of the 16,250 shares of such stock issued, wished to exchange the common shares so held for the Class 'B' Debentures of the Company on a basis whereby the Class 'A' common stockholders of the Company would receive a $100. Debenture for each twenty-five shares of common stock held. After discussion the Directors were of opinion that the desires of the shareholders as described by Mr. Draeger should be complied with." Pursuant to resolutions adopted by the shareholders and directors of petitioner at the abovementioned meetings the preferred shareholders of petitioner on December 30, 1940, presented their preferred stock for cancellation and on the same day these shares were cancelled. In April 1941, 15-year, 5% class A debentures, dated December 30, 1940, were issued in exchange therefor, as follows: Face
Shares of
Amount of
Preferred
Class A
Stock
Debentures
I. S. Lewis
424
$21,200
George A. Lewis
194
9,700
M. N. Lewis
45
2,250
M. L. Elliott
354
17,700
Total
1,017
$50,850
Pursuant to the same resolutions referred to in the preceding paragraph the following shares of class *329 A common stock were presented for cancellation on December 30, 1940, and were cancelled on the same day. In April 1941, class B debentures, dated December 30, 1940, were issued in exchange therefor, as follows: Face
Shares of
Amount of
Class A
Class B
Com. Stock
Debentures
T. H. Lewis
5,250 of 8,750
$21,000
I. S. Lewis
7,500
30,000
Total
12,750
$51,000
As a part of the exchange of class A common shares, on December 30, 1940, T. H. Lewis surrendered his remaining 3,500 shares and received therefor 3,500 shares of new class A common stock, which then constituted all the outstanding class A common stock. T. H. Lewis also caused the $21,000 face amount of class B debentures to which he was entitled under this exchange to be issued to his three children as taxable gifts, as follows: Elizabeth L. Pope
$7,000
Jane A. Lewis
7,000
T. H. Lewis, Jr.
7,000
On December 30, 1940, the certificate of amendment of the articles of incorporation was approved and issued by the Department of State of the Commonwealth of Pennsylvania. Paragraph 5 (a) and paragraph 5 (d) of the amended articles of incorporation provided in part, as follows: *330 "The preferences, qualifications, limitations and restrictions, and the special or relative rights granted to or imposed upon each class of stock are as follows: "(a) The voting power of the Company is lodged with the common shareholders; and the holders of the Class 'A' and Class b' common stock of the Company shall have cumulative voting power share and share alike, without regard to class or series. PROVIDED, HOWEVER, if the interest payments due upon any of the 15 Year 5% $50. Class 'A' Debentures, amounting in the aggregate to $55,000., the issuance of which was duly authorized in the manner provided by law, by the Shareholders of the Company at a meeting held on December 27th, 1940, shall not be paid for four consecutive quarters, thereupon the holders of such Class 'A' Debentures shall have and enjoy full voting powers, the same as the holders of the Class 'A' and Class 'B' Common Shares of the Company, until such time as either all of the arrears of interest shall have been paid in full, or for a period of one year from the date of the first default in the payment of interest due upon such Class 'A' Debentures, whichever event shall first occur. * * * * *
"(d) In *331 the event of the dissolution, liquidation, or winding up of the affairs of the Company, either voluntary or involuntary, the assets of the Company shall be distributed as follows: "First: To the general creditors of the Company in the order as among themselves, as respect to priority, as shall be required by law. "Second: To the holders of the 15 Year 5% $50. Class 'A' Debentures, amounting in the aggregate to $55,000., pro rata as their several interests may appear, such sum or sums as such Class 'A' Debenture holders may be entitled to by law. "Third: To the holders of the 15 Year $100. Class 'B' Debentures, amounting in the aggregate to $51,000, pro rata, as their several interests may appear, such sum or sums as such Class 'B' Debenture holders may be entitled to by law. "Fourth: The holders of the Class 'A' Common Stock of the Company shall receive pro rata as their several interests may appear, a sum of money equal in the aggregate to the sum of the number of Class 'A' common shares of the capital stock of the Company then outstanding multiplied at the rate of $4.00 a share. "Fifth: The holders of the Class 'B' common stock of the Company shall receive pro rata as their *332 several interests may appear a sum of money equal in the aggregate to the sum of the number of Class 'B' common shares of the capital stock of the Company then outstanding multiplied at the rate of $10. a share. "Sixth: The remaining assets of the Company shall be distributed to and among the holders of the Class 'A' and Class 'B' common stock of the Company share and share alike, pro rata as their several interests may appear." The 15-year, 5% class A debentures provided on their face, in part, as follows: "ELLIOTT-LEWIS COMPANY, INCORPORATED * * * hereinafter called Company, for value received, hereby promises to pay to or the registered holder thereof, on or before the thirtieth day of December, 1955 The Principal Amount of Dollars * * * MEANWHILE, or until this Debenture shall have been paid in full, whichever event shall first occur, to pay interest thereon quarterly at the rate of five percentum (5%) per annum, to the registered holder thereof on the thirtieth days of March, June, September and December, hereinafter more specifically referred to as Quarterly Payments Dates, during each year that this Debenture shall remain unpaid, and Company hereby charges with the payment *333 of the obligation hereby undertaken, all of its property, whatsoever and wheresoever situated, both present and future, except as such pledge may be hereinafter specifically limited and restricted. "This Debenture is one of a duly authorized issue of Class 'A' Debentures of the Company, hereinafter called Debentures, limited in the aggregate principal amount to Fifty-five Thousand Dollars * * * issued pursuant to resolutions adopted at meetings of the directors and shareholders of Company held on December 26th and 27th, 1940, respectively, in the manner required by law * * *. "The Debenture is transferable by the registered owner hereof, in person or by a duly authorized attorney, on the books of the Company * * * "At the option of the Company all or any portion of the said Debentures may be redeemed on any Quarterly Payment Date or Dates, prior to maturity, but subsequent to the thirtieth day of December, 1945, upon thirty days' written notice to the registered holder thereof, and payment to such registered holder of the principal of the said Debenture together with the sum of Two Dollars and Fifty Cents ($2.50) for each Fifty Dollars ($50.00) of Principal Obligation represented *334 hereby, together with all Quarterly Interest Payments then accrued. If less than all the said Debentures are to be called, the Debentures to be redeemed shall be selected by lot in such manner as the Board of Directors of Company may determine. "In the event that Company shall for four successive quarters neglect and fail to pay to the holder hereof the quarterly payments due and owing to said holder by Company on such Quarterly Payments Dates, the rights of the holder in such event shall be as follows: "(a) To exercise voting rights as a shareholder of the Company * * * in the manner provided by the appropriate portion of Paragraph 5 (a) of the Amended Articles of Incorporation of the Company * * * and PROVIDED FURTHER, that whenever such voting rights and powers shall be exercised, the Class 'A' Debenture holders shall be entitled to cast one vote for each One Hundred Dollars ($100.00) of debentures held. "If Company shall default for a two year period in respect to its obligation to promptly pay the quarterly payments due the holder hereof, when such payments shall accrue, the holder hereof shall have the right to declare the principal of this debenture to be due and payable *335 and to, thereafter, institute appropriate legal proceedings for the recovery of the principal hereof, together with all unpaid quarterly payments due hereon, PROVIDED, HOWEVER, that the rights of the holders hereof in any execution that may be issued upon any judgment obtained by the holder hereof in legal proceedings so instituted, shall be subordinate and junior to the rights of the general creditors of the Company, whether lien holders or otherwise. "In the event of the dissolution, liquidation or winding up of the affairs of the Company, either voluntary or involuntary, the rights of the holders hereof shall be junior to and subordinate to the rights of the general creditors of the Company, or lien holders or otherwise, in the manner specifically provided by Paragraph 5 (d) of the Amended Articles of Incorporation of the Company * * *. "IN WITNESS WHEREOF, ELLIOTT-LEWIS COMPANY, INCORPORATED, has caused this debenture to be signed by its President and its corporate seal hereto affixed and attested by its Secretary as of the 30th day of December, 1940." The language contained on the face of the class B debentures was similar to the abovementioned language contained on the *336 face of the class A debentures with the following exceptions: (1) Interest of $12.50 for each $100 of principal obligation was payable quarterly; (2) The limited aggregate amount of class B debentures was stated to be $51,000; and (3) Whenever voting rights were exercised, upon default, the class B debenture holders were to be entitled to cast 25 votes for each $100 of debentures held. No money, property, or capital of any kind was contributed or paid in to petitioner by or on behalf of any person receiving either class A or class B debentures of petitioner, except such common or preferred stock of petitioner as was given up by such persons as above indicated. The certificates of the class A common stock and the 5% cumulative $50 par value preferred stock which were given up by the holders thereof for the new class B and class A debentures, respectively, had printed on the backs thereof identical clauses setting forth a description of each class of stock of petitioner, with the preferences, voting powers, restrictions and qualifications thereof. Among other things, these clauses stated that the holders of the preferred stock had no voting rights except in case of default in payment *337 of dividends for four consecutive quarters, and then only until such time as the preferred stock is again upon a regular dividend basis; that otherwise the voting power of petitioner was lodged with the common shareholders; that the class A common stock was entitled to no dividends as long as any dividends on the preferred stock remained unpaid; that the class B common stock (none of which had been issued) was entitled to no dividends as long as any dividends on the class A common stock at the rate of $2 a share per annum remained unpaid; and that in case of dissolution the assets of petitioner were to be distributed, first, to the holders of the preferred stock, second, to the holders of the class A common stock, third, to the holders of the class B common stock, and fourth, any remaining assets were to be distributed to and among the holders of the class A and class B common stock share and share alike pro rata as their several interests may appear. At another special meeting, the board of directors of petitioner resolved on December 27, 1940 that the right to subscribe to the 15,000 shares of the new class B common stock (par value $10 per share), be specifically reserved to the *338 following persons in the amounts set forth; and, with respect to the remaining balance, to such persons as the executive officers should from time to time designate: Name
No. Shares
Par Value
T. H. Lewis
6,250
$62,500
J. E. Rowland
3,000
30,000
F. R. Attwood
500
5,000
J. Call
500
5,000
J. C. Campbell
500
5,000
O. L. Draeger
500
5,000
R. W. Loomis
500
5,000
H. R. MacAvoy
500
5,000
A. M. Morton
500
5,000
Thereafter certain officers and employees of petitioner became stockholders for the first time. The new class B common stock was subscribed to and issued to them at $10 per share until there were 6,065 shares outstanding on July 31, 1941 of which T. H. Lewis held 2,084. No dividends were ever declared or paid on either class A or class B common stock prior to July 31, 1941. In its corporation income, declared value excess-profits and defense tax return for the fiscal year ended July 31, 1941, petitioner reported gross profits of $361,175.84 on gross sales of $1,671,348.13, and claimed a deduction of $71,869.08 for compensation to its officers and $171,062.63 for salaries and wages. It reported a net income of $18,516.08. Subsequent *339 to the issuance of the debentures, the following amounts were accrued and labeled "interest" on petitioner's books during the taxable year ended July 31, 1941: Class A debentures
$ 1,483.10
Class B debentures
14,874.92
Total
$16,358.02
These amounts were in fact paid within the taxable year and without declaration of corporate officers or directors. The amounts called for on the face of the class A debentures, and denominated "interest" thereon, have at all times thereon called for, been paid to date by petitioner. The amounts called for on the face of the class B debentures, and denominated "interest" thereon, have, down to April 10, 1942, been paid monthly by petitioner; and, subsequent to April 10, 1942, amounts computed at the reduced rate hereinafter mentioned, have been paid monthly on the class B debentures by petitioner. On April 10, 1942, a special meeting of petitioner's board of directors was held at which meeting it was resolved to reduce the annual interest rate on the class B debentures "by 35% of the present interest rate" and that "the reduction in interest be effected only upon the written consent of all the holders of Class 'B' Debentures. *340 " Written consents were executed by T. H. Lewis, Jr., I. S. Lewis, Jane R. Lewis and Elizabeth L. Pope. There has been no assignment, sale, transfer or other disposition of any class A or class B debenture, from the date of its original issuance in April 1941 to date. During the taxable year neither the holders of the class A nor the class B debentures in fact exercised any voting rights. Petitioner's balance sheets as of July 31, 1940, December 28, 1940 and July 31, 1941, are as follows: Assets
July 31, 1940
Dec. 28, 1940
July 31, 1941
Cash
$ 5,616.87
$ 6,880.64
$ 7,409.81
Notes & Acct's Receivable
137,978.10
169,599.10
224,178.93
Inventories
66,410.57
77,847.96
105,142.10
Fur., Fix., Autos, Tools & Equip.
18,958.85
19,597.86
21,597.43
Employees Advances
16,253.87
38,058.23
Imps. to Leasehold
2,901.77
2,923.46
1,587.58
Prepaid Ins. Etc.
1,606.91
945.88
472.92
Totals
$249,726.94
$277,794.90
$398,447.00
Liabilities & Capital
Accounts payable
$ 69,305.94
$ 99,735.91
$110,964.77
Bonds, Notes & Mortgages Payable
30,000.00
20,000.00
151,850.00
Accrued Expenses
7,426.69
28,485.08
Reserve for Bad Debts
473.34
1,364.50
Reserve for Depreciation
8,954.56
9,907.64
11,582.90
Service Reserve (Surplus)
9,532.55
11,372.73
14,668.62
Preferred Stock
50,850.00
50,850.00
Common Stock
65,000.00
65,000.00
65,200.00
Paid-in Surplus
5,006.67
5,006.67
5,006.67
Earned Surplus & Undivided Profits
3,177.19
14,557.45
10,688.96
Totals
$249,726.94
$277,794.90
$398,447.00
*341 Petitioner's balance sheets as of July 31, 1942 and July 31, 1943 show as a part of petitioner's liabilities "Debenture Bonds" as follows: 15 Year 5% Class "A" Debentures, Due
December 30, 1955
$ 50,850
15 Year Class "B" Debentures, Due De-
cember 30, 1955 (Callable after De-
cember 30, 1945)
51,000
$101,850
The balance sheets referred to in the preceding paragraph also show that petitioner had an operating deficit as of the close of each year instead of a surplus. In a letter by petitioner's treasurer to Dun and Bradstreet dated February 23, 1943, after referring to the issuance of the class A and class B debentures, it was stated that: "We agree, intending to be legally bound thereby, that we will not make any payment on account of principal of the outstanding debentures above referred to, without giving prior notice to you and to our general creditors of our intention to do so. Such notice shall be in writing and will be mailed by us to you and to all known general creditors of the Company, at their last addresses as shown on the books of the Company, at least sixty days prior to the date of any such proposed payment on account of principal." *342 Pursuant to this letter the directors of petitioner at a special meeting held August 20, 1943, passed a resolution confirming the above quoted statement. Petitioner in its Federal income tax return for the fiscal year ended July 31, 1941, claimed a deduction for "interest" in the amount of $16,358.02, the same being attributable to the class A and class B debentures here involved. This deduction has been disallowed by the respondent. The class A debentures represented an indebtedness of petitioner. The class B debentures did not represent an indebtedness of petitioner. Opinion BLACK, Judge: The issue, as previously stated, is whether petitioner is entitled to deduct as "interest" the payments of $16,358.02, which it made to its debenture holders during the taxable year. Section 23 of the Internal Revenue Code provides that in computing net income there shall be allowed as deductions "(b) Interest. - All interest paid or accrued within the taxable year on indebtedness * * *." Whether petitioner is entitled to the deduction in question depends therefore upon whether the debentures upon which the payments of $16,358.02 were made represent "indebtedness" *343 within the meaning of that term as used in section 23 (b) of the Code. The question presented is not new. As was said in Commissioner v. Meridian & Thirteenth Realty Co., 132 Fed. (2d) 182: "Precedents are abundant, but because of the widely-varying fact bases upon which the conclusions are reached, they serve only as guides. Many are the criteria named to aid in the determination. Sometimes a particular one is called decisive, - or the most important test, - sometimes a combination of the elements sways the determination." The Court enumerated these criteria in a footnote (5) as follows: Fixed maturity; payment of dividends out of earnings, only; cumulative dividends; participation in management; whether unpaid dividends bear interest; right to sue in case of default, and whether status is equal to, or inferior to that of regular corporate creditors; nomenclature used in the documents; intent of the parties. The above criteria and the leading cases are listed and discussed in Mertens, Law of Federal Income Taxation, Vol. 4, section 26.10. See also Commissioner v. The John Kelley Company, 146 Fed. (2d) 466, decided December 21, 1944; Talbot Mills v. Commissioner, 146 Fed. (2d) 809, *344 decided December 22, 1944; and Charles L. Huisking & Co., Inc., 4 T.C. 595, promulgated January 17, 1945. In Commissioner v. The John Kelley Company, the court said: In deciding cases of this kind the various provisions of the instrument evidencing the obligation in the light of the surrounding circumstances in each case determine whether the relationship created is proprietary or that of debtor-creditor. Each case stands on its own feet. We shall first consider the class A debentures here involved. They had a fixed maturity. Interest was payable quarterly at the rate of five percent per annum. These quarterly payments were not to be paid only out of earnings as is so often the case, but were payable at all events, the only restriction being that if petitioner should default for a two-year period in the payment of such interest, then the holder had the right to declare the principal to be due and payable and to institute appropriate legal proceedings for the payment of both principal and interest with recovery being made subordinate and junior to the rights of petitioner's general creditors. The class A debenture holder could not participate in the management of petitioner *345 except that if petitioner should default for a one-year period in the payment of interest, then the holder could exercise full voting rights as a shareholder for a limited time. He was then entitled to cast one vote for each $100 of debentures held. The name given the documents in question was "Class 'A' Fifteen Year Five Percent. (5%) Debenture". They were carried on petitioner's books as a liability and so treated in its income tax returns. The evidence shows that the intent of the parties involved was to substitute a debtor-creditor relationship for that of stockholder. Petitioner caused its articles of incorporation to be amended so that the debentures and new stock would take the place of the old stock then outstanding. We think these criteria indicate that the class A debentures represented an indebtedness owing by petitioner rather than a proprietary relationship. Commissioner v. O.P.P. Holding Corporation, 76 Fed. (2d) 11; Commissioner v. Proctor Shop Inc., 82 Fed. (2d) 792; Commissioner v. Palmer, Stacy-Merrill, Inc., 111 Fed. (2d) 809; Commissioner v. J. N. Bray Co., 126 Fed. (2d) 612; Washmont Corporation v. Hendricksen, 137 Fed. (2d) 306. *346 In the O.P.P. Holding Corporation case the court said: We do not think it fatal to the debenture holder's status as a creditor that his claim is subordinated to those of general creditors. The fact that ultimately he must be paid a definite sum at a fixed time marks his relationship to the corporation as that of creditor rather than shareholder. The respondent emphasizes the fact that the debentures in question were exchanged for capital stock and that, therefore, no new money came into petitioner's use. We do not think this is material as far as the class A debentures are concerned. See Commissioner v. J. N. Bray Co., supra, where the corporation's charter was amended and debenture preferred stock was exchanged for common stock and the court held that the interest payable on the debenture preferred stock was deductible as interest paid on indebtedness. The respondent has also called our attention to the above-mentioned case of Commissioner v. The John Kelley Company, supra, stating that "Although the facts of that case are not identical with those involved in the above-entitled proceeding, it is believed that the reasoning of the Circuit Court, in *347 reaching the conclusion that the so-called income debentures evidenced risk capital and not creditor capital, is equally applicable to the facts presented herein." We do not agree with the respondent that the reasoning of the Circuit Court is equally applicable to the facts in the instant case insofar as the class A debentures are concerned. The court there stated as part of the pertinent facts the following: The 8% interest on the debentures was payable only out of the net income of the company. If there was no income, there were no payments, and defaulted payments did not accumulate. (Italics by the Circuit Court.) As shown previously in this opinion and also in our findings the situation here is entirely different. The five percent interest was payable at all events, except that defaulted payments which did accumulate were subordinate to the claim of general creditors. The above-mentioned cases of Talbot Mills and Charles L. Huisking & Co., Inc., are likewise distinguished from the instant case insofar as the class A debentures are concerned. In the former, the so-called "interest" was variable from two to ten percent depending upon the corporation's profits and also postponable *348 in the discretion of the directors. In the latter, so-called "interest" was payable only at the option of the corporation. Here the payment of interest was absolute. We hold that the interest paid on the class A debentures is deductible under section 23 (b), supra. We, therefore reverse the respondent's determination relative to the class A debentures. We shall now consider the class B debentures here involved. They were exchanged for 12,750 shares of petitioner's old class A common stock. They carried substantially the same provisions as did the class A debentures except for one material difference which when considered with all the other surrounding circumstances we consider fatal to petitioner's contentions. This difference was with regard to the so-called "interest" provision. The class B debentures called for the quarterly payments "as interest" of $12.50 for each $100 debenture, which is equivalent to a rate of 50 percent per annum. This was the same rate at which the old class A common stockholders were entitled to as dividends before any dividends could be declared on the old class B common stock. Petitioner in its reply brief indirectly admits that such a rate "as interest" *349 would be usurious, but argues that the class B debentures were nevertheless indebtedness although calling for usurious interest, and cites in support thereof Arthur R. Jones Syndicate v. Commissioner, 23 Fed. (2d) 833 and Wiggin Terminals, Inc. v. United States, 36 Fed. (2d) 893. We do not regard these cases as being in point for the reason that the taxpayer in both cases was seeking a loan which could only be obtained by paying usurious interest and which difficulty was circumvented by making the lender in form a stockholder as well as a creditor until the interest originally agreed upon had been paid. It was held in both cases that the amounts paid the lender in the form of dividends were in substance interest and deductible. In the instant proceeding petitioner was not seeking a loan. It was attempting to convert a certain portion of class A common stock, all of which was held by a husband and wife, into an indebtedness. The class A common stock was of no par value but was carried on petitioner's books at a value of $4 per share and was superior to the class B common stock in that no dividends could be paid on the latter until the former had received *350 annual dividends of $2 per share. For each $100 class B debenture issued the class A common stockholders turned in 25 shares of the old stock. The debentures were payable on or before December 30, 1955, but this is not necessarily decisive. See Charles L. Huisking & Co., Inc., supra, and cases there cited. In case of default in the payment of the socalled interest for a period of one year the class B debenture holders were entitled to cast 25 votes for each $100 of debentures held whereas under similar circumstances the class A debenture holders were only entitled to cast one vote for each $100 of debentures held. There was thus quite a difference in voting rights between the two classes of debentures. The provisions for subordination to the rights of general creditors were the same in both classes of debentures. In Commissioner v. The John Kelley Company, supra, the court, among other things, said: It may further be observed that in a slack business year such as 1937 a corporation which was able to pay $55 a share cash dividends and a stock dividend of 3 1/2 shares for one, ought not to have had to pay 8% interest on its debentures. In our opinion, the *351 8% rate of interest was not fixed with any regard to the money market in 1937 but was fixed to drain off 8% interest on debentures which had retired 6% stock. In a somewhat similar situation in the instant proceeding, the petitioner here had agreed to pay 50 percent so-called interest on the class B debentures. Weighing all the various provisions of the class B debentures in the light of the surrounding circumstances we are of the opinion that the relationship created was proprietary rather than that of debtor-creditor. Commissioner v. The John Kelley Company, supra.We, therefore, sustain the respondent's determination relative to the class B debentures. Decision will be entered under Rule 50.